[620 NYS2d 445]

In the Matter of THOMAS J. NAUGHTON, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, December 27, 1994

**APPEARANCES OF COUNSEL**

*Frank A. Finnerty, Jr.,* Syosset *(Dianne M. Saccone* of counsel), for petitioner.

*Meiselman, Boland, Reilly & Fugazzi,* Mineola *(Donald J. Boland* of counsel), for respondent.

OPINION OF THE COURT

Per Curiam.

In this proceeding, the respondent is charged with six allegations of professional misconduct. The Special Referee sustained all six charges. The petitioner moves to confirm the report of the Special Referee. The respondent cross-moves to confirm the report of the Special Referee with respect to Charges One and Two and to disaffirm the report with respect to Charges Three, Four, Five, and Six.

Charge One alleged that between the period of approximately March 31, 1988 until December 5, 1988, the respondent commingled escrow funds with his business and/or personal funds, in violation of former Disciplinary Rule (Rules of App Div, 2d Dept [22 NYCRR]) 691.12 (a) and Code of Professional Responsibility DR 1-102 (A) (1), (4), (5) and (former [6]) (now [8]) and DR 9-102 (A) (22 NYCRR 1200.3, 1200.46). In or about March 31, 1988, the respondent maintained an interest-bearing money management account entitled "Thomas Naughton and Patricia Ann Naughton". Patricia Ann Naughton is the daughter of the respondent, Thomas J. Naughton, and is not an attorney. On or about March 31, 1988, the respondent, as an attorney for the sellers in a real estate transaction, received and accepted a $13,000 down payment which he agreed to hold in escrow as an attorney until closing. The respondent deposited the escrow into the previously mentioned money management account on April 1, 1988. This account was not an attorney escrow account, but rather contained the personal funds of the respondent and his daughter. The respondent commingled the above-mentioned escrow funds with his business and/or personal funds. By the aforementioned conduct the respondent violated 22 NYCRR former 691.12 (a) and Code of Professional Responsibility DR 1-102 (A) (1), (4), (5) and (former [6]) (now [8]) and DR 9-102 (A) (22 NYCRR 1200.3, 1200.46).

Charge Two alleged that from on or about March 31, 1988 until December 5, 1988, and thereafter, the respondent violated former Disciplinary Rule 691.12 of the Rules of the Appellate Division, Second Judicial Department. During the aforementioned period, and thereafter, as attorney for the sellers, the respondent did not hold the escrow down payment

of $13,000 nor the subsequent escrow of $9,100 in a special attorney escrow account but in a joint, interest-bearing money management account with his daughter, Patricia Ann Naughton, a nonattorney. During this same period, the respondent failed to maintain a special attorney escrow account and did not maintain the required bookkeeping records for escrow funds, including a ledger book or similar record, monthly bank statements, and deposit slips.

Charge Four alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, and misrepresentation when, after being duly sworn as a witness on November 9, 1989, he gave testimony which he knew or should have known was false and misleading, in violation of Code of Professional Responsibility DR 1-102 (A) (4), (5) and (former [6]) (now [8]) (22 NYCRR 1200.3). The respondent testified under oath on November 9, 1989, as a witness in an action where the broker was suing the sellers (the respondent's clients). The respondent was duly sworn by a notary public in and for the State of New York, and testified:

"Q: Was that $13,000 deposited in an account maintained by you?

"R: Yes, it was.

"Q: Could you describe that account and tell us where it was maintained and the account number?

"R: Manufacturers Hanover, 184 Old Country Road. The account number was 17171865."

On April 1, 1988, the respondent had deposited the down payment sum of $13,000, which he was to have held in escrow until closing, in a personal account number 1716015706, not account number 17171865. The respondent testified: "[It is] my account. It's an enumerated special account." Account number 1716015706 at Manufacturers Hanover Bank in Mineola, New York, was a personal money management account, and is not an enumerated special account. The respondent testified on November 9, 1989:

"Q: Does anyone else have signatory powers on that account?

"R: I don't believe so, no."

The respondent knew or should have known that this statement was false because the account was maintained jointly by the respondent and his daughter.

The respondent testified on November 9, 1989:

"Q: How was that money disposed of?

"R: It was transferred, paid out to [the seller] on—let's see, I have it here, December the fifth, 1988. * * *

"MR. SCAVUZZO: Let the record show that the witness has produced a check number 1201 dated December 5th, 1988, and payable to [the seller] in the sum of $9,100 on account number 171000071865-1201. The $13,000 deposit on the real estate transaction was deposited into respondent's money management account at Manufacturers Hanover Bank, Mineola, New York, account number 171-6015706."

On December 5, 1988, the respondent transferred $9,100 from the aforementioned personal money management account to account number 171-000071865. On December 5, 1988, the respondent issued a check drawn on account number 171-000071865 in the amount of $9,100 payable to the seller. The respondent testified on November 9, 1989:

"Q: When you closed out the account on December 5, 1988, what was the disposition of those funds?

"R: December 5th, I sent it to [the seller].

"Q: I am only referring now to the balance of the account 17171865 which was closed.

"R: There is no money in there. I was using that basically as an escrow account."

Manufacturers Hanover account number 17171865 was not closed on December 5, 1988. After the $9,100 check was debited from the aforementioned account on December 6, 1988, a balance remained of over $2,400. While check number 1201 of account 171-000071865 recited thereon that it was a special account, the account number 171-000071865 was actually the joint personal account of the respondent and his daughter.

Charge Five alleged that the respondent has converted escrow funds to his own use, in violation of Code of Professional Responsibility DR 1-102 (A) (1), (4), (5) and (former [6]) (now [8]) and DR 9-102 (A) (22 NYCRR 1200.3, 1200.46). During the period from at least April 1, 1988 until December 5, 1988, the respondent commingled escrow funds received by him as attorney for clients in a personal interest-bearing money management account entitled "Thomas Naughton and Patricia Ann Naughton" at Manufacturers Hanover Bank. This money management account provided for payment of a variable interest ranging from 5.65% to 6.80% and in 1988

the account was credited with interest of $3,636.43. None of the interest earned in 1988, or in any year, by the money management account was paid by the respondent to any clients. The respondent retained and converted to his personal use all interest earned by the said money market account in which he had commingled attorney escrow funds with his personal funds.

Charge Six alleged that from about January 1990 to about August 1990, the respondent failed to cooperate with the Grievance Committee for the Tenth Judicial District, with respect to an investigation of allegations of his professional misconduct, in violation of Code of Professional Responsibility DR 1-102 (A) (5) and (7) (now [8]) (22 NYCRR 1200.3). By letter dated January 5, 1990, the Grievance Committee forwarded a copy of a complaint filed by John A. Kelly to respondent requesting his written answer to the allegations within 15 days of his receipt of the correspondence. The complaint filed by John A. Kelly arose from the real estate transaction out of which Charge Two arose, and involved allegations that the respondent had wrongfully released escrow funds which he was required to retain pending resolution of entitlement thereto. When no reply was forthcoming by February 27, 1990, a second copy of the complaint was sent by certified mail to the respondent for his written answer, with a warning concerning any failure to cooperate with the Committee's investigation. By letter dated March 8, 1990 the respondent wrote apologizing that the Committee's letter of January 5, 1990 had been misplaced by him. The respondent advised that while he was willing to provide his file and provide the Committee with his defenses, since the matter was in litigation it was in the best interests of his client and himself to reveal his defenses to the Committee alone and not the complainant and his attorney. By letter dated March 12, 1990, the Committee informed the respondent that it was not seeking confidential information received from his client, but his explanation of the receipt and disbursement of the escrow funds he received and copies of his monthly bank escrow statements were requested with his written response by no later than March 20, 1990.

By letter dated March 20, 1990, the respondent advised that his accountant, who was presently unavailable, had possession of his bank statements but that he would furnish copies to the Committee when he reached him. Annexed to the letter, the respondent submitted a copy of the signed Order to Show

Cause of October 12, 1988, restraining the collection of the default judgment pending resolution of the application to vacate the default. The respondent also furnished a copy of a cancelled check dated December 5, 1988, in the sum of $9,100 payable to his client, the seller, drawn on Manufacturers Hanover Bank on account number 171-000071865, entitled "Thomas J. Naughton, Special". The respondent did not advise that the account above mentioned was not the account in which the escrow sum had been deposited from April 1, 1988 to December 5, 1988. By letter dated May 25, 1990, the respondent was advised that the Committee had been waiting over two months for the requested bank records and requested his prompt attention thereto. The respondent never complied, and the Committee was constrained to subpoena the respondent for a deposition which was held on August 22, 1990.

After a review of the evidence adduced, we find that the Special Referee properly sustained Charges One, Two, Four, Five, and Six. We further find that the Special Referee erred in sustaining Charge Three. Accordingly, the petitioner's motion to confirm the report of the Special Referee is granted to the extent that it seeks to confirm the Special Referee's findings as to Charges One, Two, Four, Five, and Six, and is otherwise denied. The respondent's cross motion is granted to the extent that it seeks to confirm the Special Referee's findings with respect to Charges One and Two and to disaffirm the Special Referee's findings with respect to Charge Three, and is otherwise denied.

In determining an appropriate measure of discipline to impose, we have considered the mitigation advanced by the respondent, including but not limited to the fact that this disciplinary proceeding emanated from the respondent's representation of clients in one real estate matter, and the fact that the respondent has remedied all errors in his bookkeeping and handling of client funds by opening a proper IOLA account. It is the decision of this Court that the respondent be suspended from the practice of law for a period of one year.

MANGANO, P. J., THOMPSON, BRACKEN, SULLIVAN and GOLDSTEIN, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted insofar as it seeks to confirm the findings of the Special Referee with respect to Charges One, Two, Four, Five, and Six, and is otherwise denied; and it is further,

Ordered that the respondent's cross motion to confirm in part and disaffirm in part the Special Referee's report is granted to the extent that it seeks to confirm the findings of the Special Referee with respect to Charges One and Two and to disaffirm the findings with respect to Charge Three and is otherwise denied; and it is further,

Ordered that the respondent, Thomas J. Naughton, is suspended from the practice of law for a period of one year, commencing January 17, 1995, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the one-year period upon furnishing satisfactory proof (a) that during that period he refrained from practicing or attempting to practice law, (b) that he has fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), and (c) that he has otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Thomas J. Naughton, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.